# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 11-648

STATE OF LOUISIANA

VERSUS

PAUL B. STEPHAN

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 13658-08
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders and Shannon J. Gremillion, judges.

**AFFIRMED**.

Paula C. Marx
Louisiana Appellate Project
P.O. Box 80006
Lafayette, LA 70598-0006
(337) 991-9757
Counsel for Defendant/Appellant, Paul B. Stephan

Karen C. McLellan
Assistant District Attorney
Hon. John F. DeRosier
District Attorney
1020 Ryan Street
Lake Charles, LA 70601
(337) 437-3400
Counsel for Appellee, State of Louisiana

**COOKS, Judge.**

## PROCEDURAL HISTORY

Paul Stephan (Defendant), was charged by bill of indictment with the offenses of attempted second degree murder, theft of a vehicle valued over $500.00, and second degree robbery. Defendant originally pled not guilty to the charges but later entered a guilty plea to the charge of second degree robbery as part of a plea bargain in which the State dismissed the charges of attempted second degree murder and theft. A presentence investigation was ordered by the court, and on November 10, 2010, the Defendant was sentenced to serve thirty years in the custody of the Louisiana Department of Corrections. Defendant appeals his conviction and alleges his sentence is excessive. Defendant did not file a motion for reconsideration of sentence in the trial court.

## FACTS

The factual basis provided by the State at the guilty plea proceeding simply indicated that investigation by the Calcasieu Parish Sheriff's Office revealed Defendant committed a second degree robbery of Cesar Torres (Torres). No further particular facts were mentioned. Facts established during the sentencing phase of this case show that Torres had been a helpful friend to Defendant. Defendant invited Torres to his home in the guise of introducing him to some girls. Upon arriving at Defendant's home, Torres knocked on the front door but no one answered. After Torres turned to walk away, Defendant shot him in the back of the head and took him inside his home. He told Torres that he had fallen and hit his head on a nail. Defendant laid Torres on the couch and left him there bleeding for approximately five hours without seeking medical assistance. Defendant took Torres' coat which contained his credit cards and truck keys before calling an

ambulance. After the ambulance took Torres to a hospital, Defendant took a nap, and then drove to Texas in Torres' vehicle and proceeded to use Torres' credit cards. Defendant admits using Torres credit cards and taking his truck. The indictment also charged Defendant with taking cash from Torres but the cash which Torres had on him when he arrived at Defendant's home was still on his person at the hospital.

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. There are no errors patent.

## ASSIGNMENT OF ERROR NO. 1

Defendant contends the trial court erred in denying his motion to withdraw his guilty plea because the record does not demonstrate sufficient compliance with statutory and constitutional requirements. More specifically, Defendant contends his plea should be vacated because it was taken in the absence of advice as to the nature of the charges and his right to maintain his plea of not guilty.

Defendant claims his colloquy with the court does not establish that he fully understood the nature of the charge against him. He sets forth his argument as follows:

> The colloquy between the court and Mr. Stephan in this case does not evidence a sufficient exchange to establish Mr. Stephan fully understood the nature of the charges against him and that the plea was freely and voluntarily entered. The record does not reflect Mr. Stephan was advised he had the right to maintain his plea of not guilty, as is required by Article 556.1.

> The court read the plea form which included a statement that Paul Stephan understood the nature of the charge. But there was no explanation and appellant's answers were simply, "yes, sir" or "no, sir" to the questions posed in the reading of the form. While the court went over the *Boykin* rights in this process, the elements of second degree robbery were not read, nor were the specifics of the indictment mentioned in the colloquy. The factual basis for the conviction of second degree robbery was conclusory as well.

2

This deficiency is significant since the indictment charges the thing taken in the robbery was U.S. currency, and Mr. Stephan admitted only to using Torres' truck and credit cards. A sealed bag of money was still in Torres' possession when he was taken by ambulance to the hospital, thus, this currency clearly was not taken by Mr. Stephan. Also, Mr. Stephan denied shooting Torres. Thus, the explanation of the nature of the charge is essential since one element of second degree robbery is that the offender intentionally inflict serious bodily injury. LSA R.S. 14:64.4.

Defendant contends the record before this court shows he lacked awareness of the essential nature of the offense to which he was pleading, and for this reason, he argues, his plea cannot stand. He requests a remand to be given the option to proceed to trial or plead anew with full advice of his rights.

Second degree robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury." La.R.S. 14:64.4.

At the plea proceeding, the State indicated Defendant was charged with theft, second degree robbery, and attempted second degree murder. It further indicated that upon his guilty plea to second degree robbery, the State would move to nolle prosse the remaining two charges. Defendant acknowledged he had reviewed the plea form with his attorney. The judge read over the form with Defendant and instructed Defendant to stop him if he had any questions. In pertinent part, the written plea form stated, "I understand the nature of the charge and that this is a felony offense which could result in a penitentiary sentence . . . ." The court read this statement to Defendant and advised him of the penalty range for the offense. Defendant indicated to the court he understood what he was being told. The court then reviewed the rights Defendant was waiving by pleading guilty, specifically, a right to a jury trial, the right to confront and cross-examine

3

witnesses, the right to compulsory process, the privilege against self-incrimination, the right to counsel, and the right to appeal from a verdict of guilt. When asked by the court whether Defendant's attorney had "gone over all of this," Defendant answered in the affirmative. The court asked Defendant whether he had any questions concerning the form or his plea. He replied he did not. The factual basis provided by the State was, "the state would prove that on or about November 25, 2007, investigation by the Calcasieu Parish Sheriff's Office revealed the defendant did commit a second degree robbery of Cesar Torres." Defendant acknowledged that this fact was correct.

Louisiana Code of Criminal Procedure Article 556.1 provides in pertinent part:

> A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
>
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
>
> . . . .
>
> (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
>
> . . . .
>
> E. Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.

In support of his position, Defendant cites *State v. Ford*, 06-1435 (La.App. 3 Cir. 4/4/07), 954 So.2d 876. In *Ford*, the defendant was originally charged with one count of vehicular homicide, one count of hit and run driving, and one count of

4

operating a vehicle while intoxicated. The latter two charges were dismissed by the state upon the defendant entering a plea of guilty to the offense of vehicular homicide. On appeal, the defendant claimed the trial court failed to inform him that causation was an element of vehicular homicide, and because of that failure, his motion to withdraw his guilty plea should have been granted by the trial court.

This court determined that the trial court's failure to advise the defendant of causation, an essential element of the offense, was not harmless error[1]:

> The record of the plea proceedings establishes that the trial court informed the defendant that he was charged with vehicular homicide, but did not inform him of the nature of the charge by explaining its elements. Thus, the trial court failed to comply with its obligations pursuant to La.Code Crim.P. art. 556.1(A)(1). However, in *State v. Longnon*, 98-551, p. 7 (La.App. 3 Cir. 10/28/98), 720 So.2d 825, 829, *writ denied*, 98-2969 (La.3/19/99), 739 So.2d 781, this court concluded that because the requirement of La.Code Crim.P. art. 556.1(A)(1) "is a statutory requirement rather than a constitutional requirement (as is the requirement that the trial court inform the Defendant of the three *Boykin* rights)" it is subject to a harmless error analysis. *See also State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La.2/10/06), 924 So.2d 163; *State v. Morrison*, 99-1342 (La.App. 3 Cir. 3/1/00), 758 So.2d 283; *State v. Whiddon*, 99-1 (La.App. 3 Cir. 6/2/99), 741 So.2d 797. In reviewing the record before us, we find that the trial court's failure to comply with La.Code Crim.P. art. 556.1(A)(1) is not harmless error. The record contains nothing that would give notice to the defendant of the specific elements of the offense for which he was charged. In fact, the only other reference in the record to the nature of the offense is found in an inadequate factual basis presented by the state to the trial court during the plea proceedings. That factual basis presented is as follows:
>
> > The State would prove, on October 29th, 2004, [the defendant] was the operator of a motor vehicle in the approximate 200 block of 16th Street, in Lafayette. Also

---

[1]In the present case, the State was not *required* to provide a factual basis because the Defendant entered a plea of guilty rather than one pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160 (1970). *See State v. Tauzin*, 98-46 (La.App. 3 Cir. 10/7/98), 720 So.2d 98.

In *Ford*, the defendant entered a plea of guilty. Hence, the state was not required to provide a factual basis, although this was not mentioned in the opinion. However, the factual basis that was provided was considered in this court's analysis of whether the defendant was made aware of the elements of the crime.

in and around that area was a bicycle being operated by McDaniel Landry.

Mr. Ford collided with and struck the bicycle being maneuvered by Mr. McDaniel Landry. The impact caused Mr. Landry to travel across the top of the defendant—Mr. Ford's vehicle. He landed face down in the roadway about 25 feet away.

Mr. Ford was—had been smoking marijuana and was smoking marijuana at the time of the crash. This, he admitted to Officer Chad Fontenot. Mr. Landry died as a result of the injuries that were suffered during the course of this accident.

. . . .

No question that the accident was proximately caused by the operation of that motor vehicle while he was under the influence of marijuana.

This factual basis established only that an accident involving the defendant and the victim occurred on October 29, 2004, and that the victim died as a result of the injuries he sustained therein. It is silent as to the *particulars* of the accident and does not impart knowledge of the elements of the offense to the defendant. That is to say, the record contains nothing to suggest who *caused the accident*.[1] As pointed out by the defendant on appeal, this factual basis coupled with the trial court's failure to inquire into his understanding of the nature of the charge would lead the defendant to conclude that he was guilty of vehicular homicide by having been involved in an accident which resulted in a fatality after having smoked marijuana sometime in the immediate past. Such an understanding does not address who caused the accident as is a required element of La.R.S. 14:32.1.

We find merit in this assignment of error. The noncompliance with La.Code Crim.P. art. 556.1(A)(1) requires that we vacate the defendant's conviction and sentence and remand this matter to the trial court for further proceedings.

[1]The last comment of the state concerning causation is nothing more than an unsubstantiated conclusion if based on the factual basis presented.

*Id.* at 879-80.

In Defendant's brief, although he denies he took currency from the victim, Defendant notes he admitted to using the victim's truck and credit cards. Second degree robbery requires the taking of "something of value belonging to another."

Thus, Defendant's acknowledgement that he took the victim's truck and credit cards refutes his allegation that he was unaware of this particular element of the offense.

This case is distinguishable from *Ford*. Although the trial court did not specifically inform the Defendant of the nature of the charge in this case, it did inquire as to whether he understood the nature of the charge:

**THE COURT:**

. . . .

> "I understand the nature of the charge and that it is a felony offense which could result in a penitentiary sentence if I am guilty thereof. I am also aware of the minimum and maximum sentences provided therefor by law."

> There is a minimum sentence of two years Department of Corrections, not more than forty years.

> Do you understand that?

**MR. STEPHAN:**

> Yes, sir.

Further, Defendant in the present case was originally charged with attempted second degree murder of the victim, a charge dismissed in conjunction with his plea of guilty. The presence of the charge of attempted murder of the victim demonstrates an awareness by Defendant that the State alleged he inflicted serious bodily injury on his victim. This, combined with Defendant's representation to the court that he understood the nature of the charge, distinguishes this case from *Ford*.

7

# HARMLESS ERROR

In *State v. Gross*, 99-3534 (La. 6/23/00), 768 So.2d 592, 592-93, the supreme court issued the following ruling regarding a similar violation of La.Code Crim.P. art. 556.1:

> Writ granted. The judgment of the court of appeal vacating defendant's guilty plea is reversed, defendant's conviction and sentence are reinstated. The defendant made the critical decision not to risk the self-defense scenario outlined in his confession in the context of a capital murder trial at which he could receive the death penalty, and to accept a life sentence running concurrently with another life sentence imposed in Arkansas for an unrelated murder. Given that choice, the trial court's failure to advise the defendant, as part of the plea colloquy required by La.Code Crim. Proc. art. 556.1, that a charge of first degree felony murder under La.Rev.Stat. 14:30A(1) requires the state to prove specific intent to kill or to inflict great bodily harm, as opposed to second degree felony murder, another life offense, which does not have a specific intent component, La.Rev.Stat. 14:30.1A(2)(a), cannot " 'reasonably be viewed as having a material factor affecting the [defendant's] decision to plead guilty.['] ["] *State v. Guzman*, 99-1528, p. 11 (La.5/16/00), 769 So.2d 1158, 1165 (quoting *United States v. Johnson*, 1 F.3d 296, 301-02 (5th Cir.1993)).

In a number of cases, this court has found noncompliance with La.Code Crim.P. art. 556.1, but has found such error harmless. For example, in *State v. Morrison*, 99-1342 (La.App. 3 Cir. 3/1/00), 758 So.2d 283, the defendant complained on appeal that the trial court failed to comply with art. 556.1 because it failed to inform him of the elements of the charge. The guilty plea form signed by the defendant indicated he was informed of the nature of the charge, but the guilty plea colloquy did not indicate that he was informed by either his attorney or the trial judge of the elements of the charge. This court held:

> Prior to the enactment of Article 556.1, this court chose not to vacate guilty pleas based on the trial court's failure to advise the defendant of the nature and penalties of his crime. Since the enactment of Article 556.1, however, such an advice is mandatory. Thus far, this court has found that when noncompliance with Article 556.1 involves a statutory requirement rather than a constitutional requirement (i.e., advising of the three *Boykin* rights) the

noncompliance is harmless if the defendant does not "allege any misunderstanding as to the nature of the charges to which he pled." *See State v. Whiddon*, 741 So.2d at 800. In the instant case, the Defendant specifically alleges that the trial court did not satisfy the requirements of Article 556.1 by failing to advise him of the elements of the charge against him. However, the Defendant does not allege that he did not understand the nature of the charges to which he pled. The record clearly reflects that the Defendant was properly *Boykinized*, informed of the charge and sentencing exposure, and of the factual basis for the charge. Under the circumstances, we find the trial court's failure to delineate the specific elements of the charge to be harmless error.

*Id.* at 284-85.

In *State v. Whiddon*, 99-1 (La.App. 3 Cir. 6/2/99), 741 So.2d 797, this court, on error patent review,[2] found that the trial court did not personally inform the defendant of the nature of the charge to which he pled guilty. At the *Boykin* proceeding, the prosecutor stated the defendant was charged with driving while intoxicated, third offense, and the judge later stated he was charged with DWI, third offense. This court found the advice sufficient since DWI is a fairly straightforward crime. However, this court pointed out that the trial court did not read the elements of the offense and did not explain the prior offense element. Accordingly, this court found a violation of art. 556.1 had occurred, but it held:

Nevertheless, "since this requirement is a statutory requirement, rather than a constitutional requirement . . . and the Defendant does not allege any misunderstanding as to the nature of the charges to which he pled," nor is there any indication from the *Boykin* analysis, which follows, that his plea was involuntary." Accordingly, we find the error harmless.

*Id.* at 800.

In *State v. Roberts*, 08-1026 (La.App. 3 Cir. 3/4/09), 4 So.3d 1011, this court faced a similar issue:

---

[2]*Whiddon* was decided before the supreme court's ruling in *Guzman*, 769 So.2d 1158, which held that examination of a guilty plea transcript for compliance with La.Code Crim.P. art. 556.1 is beyond the scope of an error patent review.

Defendant contends that the trial court failed to ascertain his ability to make a knowing and intelligent decision to enter a plea of guilty.

> A valid guilty plea must be a free and voluntary choice by the defendant. A guilty plea will not be considered free and voluntary unless, at the very least, the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Kennedy*, 42,850 (La.App.2d Cir.1/9/08), 974 So.2d 203. An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed.

*State v. Minniefield*, 43,300, p. 3 (La.App. 2 Cir. 6/4/08), 986 So.2d 227, 230.

. . . .

Defendant asserts that despite his claim of self-defense, the trial court failed to determine whether he understood his right to continue his plea of not guilty and prove that he acted in self-defense. The trial court informed Defendant that he had the right to plead not guilty. Defendant does not allege that he did not understand that he had the right to persist in his plea of not guilty. Self-defense was not asserted by Defendant or defense counsel at the time Defendant entered his plea of guilty, and Defendant never filed a motion to withdraw his guilty plea on these grounds.

Defendant asserts that although the trial court discussed each *Boykin* right and read the statute for aggravated second degree battery, including the penalty range, it did not assure itself that he understood what was being said. Defendant has not alleged that he did not understand the information explained to him by the trial court or that he did not intend to enter a plea of guilty. Defendant was represented by counsel. The transcript indicates that the trial court fully explained Defendant's *Boykin* rights to him and that he indicated that he understood each of those rights. We conclude that the inquiry made by the trial court at Defendant's guilty plea hearing satisfied the requirements of *Boykin* and La.Code.Crim.P. art. 556.1.

Defendant complains that the trial court did not define battery when giving the definition of aggravated second degree battery, and thus, he was not properly and fully informed of the nature of the charge against him. In support of his argument, Defendant cites *State v. Ford*, 06-1435 (La.App. 3 Cir. 4/4/07), 954 So.2d 876. . . .

In *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La.2/10/06), 924 So.2d 163, the defendant challenged the sufficiency of the trial court's description of the nature of the offense of aggravated second degree battery. In rejecting Roe's argument, we noted:

> [O]ur review indicates that the record supports the defendant's assertion that the trial court did not list the elements of the offense at the sentencing hearing. However, as in [*State v.*] *Morrison* [, 99-1342 (La.App. 3 Cir. 3/1/00), 758 So.2d 283], our review indicates that the defendant was properly *Boykinized*, informed of the factual basis for the charge and informed of the possible sentencing exposure. Furthermore, the defendant does not allege on appeal that he did not understand the nature of the charge against him, merely that the district court did not ascertain that he understood. Based on these circumstances, we find the trial court's failure to list the specific elements of the defendant's charge to be harmless error.

*Id.* at 1269. *See also State v. Matthew*, 07-1326 (La.App. 3 Cir. 5/28/08), 983 So.2d 994.

The definition of battery is fairly straightforward. Defendant admitted that he hit the victim and cut him with a box cutter. Moreover, he failed to allege he did not understand the nature of the charge against him. We conclude that the trial court's failure to inform Defendant of the definition of battery was harmless error.

Defendant complains that the trial court did not inform him of the intent necessary to commit the offense of aggravated second degree battery. He contends that the facts which he recited when he entered his plea of guilty do not indicate he had the specific intent to commit battery but instead show that he was defending himself. Nevertheless, neither Defendant nor defense counsel claimed self-defense at the guilty plea. Furthermore, Defendant does not allege that he did not understand the intent necessary to commit the offense or the nature of the offense.

Defendant argues that the trial court failed to inform him of the additional penalty required by La.Code Crim.P. art. 883.2. This assertion is correct; however, nothing in La.Code Crim.P. art. 556.1 requires the trial court to inform a defendant about the mandates of La.Code Crim.P. art. 883.2. Additionally, Defendant does not assert he was unaware of the provisions of that article or that he would not have pled guilty had he known he could be ordered to pay restitution. Further, it appears Defendant was aware restitution was an issue as his attorney mentioned it immediately after the plea.

11

Defendant next asserts that the trial court failed to inform him of the injuries suffered by the victim. Louisiana Code of Criminal Procedure Article 556.1 does not require the trial court to inform a defendant of the injuries suffered by a victim. Additionally, Defendant does not allege that he was unaware of the injuries suffered by the victim.

Defendant's guilty plea was knowingly and intelligently made. We find the case at bar distinguishable from *Ford* in that Defendant informed the trial court that he fought with the victim and admitted to cutting the victim with a box cutter. Thus, causation was clearly established. For the reasons outlined above, Defendant's second assignment of error lacks merit.

*Id.* at 1016-19.

Next, in *State v. Sullivan*, 02-360 (La.App. 3 Cir. 10/2/02), 827 So.2d 1260, *writ denied*, 02-2931 (La. 4/21/03), 841 So.2d 790, *and writ denied*, 02-2965 (La. 9/5/03), 852 So.2d 1024, the defendant argued that the trial court failed to advise him of the minimum and maximum sentences for his offense, information that is required to be given in accordance with La.Code Crim.P. art. 556.1. This court granted no relief, stating:

We do not conclude that knowledge of the minimum and maximum penalties for first degree robbery would have affected the defendant's decision to plead to second degree robbery. He has an extensive criminal history, agreed to an open-plea, and was well aware that he could have been charged as an habitual offender. In fact, at the August 7, 1997 hearing, the trial court specifically called to the defendant's attention the life-imprisonment provisions of La.R.S. 15:529.1 for multiple offenders. We find it unlikely that knowing the minimum and maximum penalties would have affected the defendant's decision to plead guilty.

*Id*. at 1265.

In the present case, Defendant alleges his colloquy with the court does not show a sufficient exchange to establish that he fully understood the nature of the charges, and that the plea was voluntarily entered. He claims the record shows he lacked awareness of the nature of the offense. There is nothing in the guilty plea transcript suggesting Defendant was unaware of the nature of the charge nor

anything indicating the plea was involuntary. Defendant was apprised of, indicated he understood, and waived his right to a trial by jury, his right to confront his accusers, and his privilege against self-incrimination. As in *Gross*, given the fact that Defendant was originally facing charges of attempted second degree murder and theft (dismissed in conjunction with Defendant's guilty plea), the trial court's failure to advise Defendant that a charge of second degree robbery required the State to prove that he intentionally inflicted serious bodily injury on the victim cannot " reasonably be viewed as having [been] a material factor affecting the [defendant's] decision to plead guilty." *Gross*, 768 So.2d at 593. Accordingly, we find that although an art. 556.1 violation occurred, it is harmless error.

Defendant, in a single sentence, also asserts that "[t]he record does not reflect Mr. Stephan was advised he had the right to maintain his plea of not guilty, as is required by Article 556.1." While Defendant points out the trial court's noncompliance with art. 556.1 on this basis, he does not allege on appeal that he did not understand that he could maintain his plea of not guilty. He simply alleges he was not specifically advised that he could do so. Thus, for the reasons stated above, this error is harmless as well.

### ASSIGNMENT OF ERROR NO. 2:

Defendant contends the trial judge, who did not preside over the taking of the guilty plea, failed to sufficiently articulate the factors considered for sentencing as required by La.Code Crim.P. art. 894.1 and that he received an excessive sentence. He claims the excessiveness of his sentence cannot be fully explored without sufficient articulation for the reasons for sentencing.

Defendant did not file a motion to reconsider sentence, thus, Defendant's claims are barred by La.Code Crim.P. art. 881.1. *See State v. Baylor*, 08-141

13

(La.App. 3 Cir. 11/26/08), 998 So.2d 800, *writ denied*, 09-275 (La. 11/20/09), 25 So.3d 795. Accordingly, Defendant's claim concerning the trial court's noncompliance with La.Code Crim.P. art. 894.1 cannot be considered. Our review of Defendant's sentence is limited to a bare claim of excessiveness. *See State v. Boyer*, 10-693 (La.App. 3 Cir. 2/2/11), 56 So.3d 1119.

Defendant points out for this court's consideration that he is sixty years old and has COPD, making a thirty year sentence essentially a life sentence for him. He notes that despite his illness he has held a full-time job and has served in the military.

In *State v. Guilbeau*, 11-99, p. 8-9 (La.App. 3 Cir. 6/22/11), __ So.3d __, this court discussed the basis for reviewing a bare claim of excessiveness. We stated therein:

> The analysis for an excessive sentence claim is well-established:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U .S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-0838 (La.2/1/02), 808 So.2d 331 (alteration in original).

In *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-0433 (La.6/25/99), 745 So.2d 1183, our colleagues on the Fifth Circuit Court of Appeal noted three factors the appellate court should consider in reviewing a judge's sentencing discretion. They are:

> 1. the nature of the crime,
>
> 2. the nature and background of the offender, and
>
> 3. the sentence imposed for similar crimes by the same court and other courts.

*State v. Telsee*, 425 So.2d 1251 (La.1983); *State v. Richmond*, 97-1225 (La.App. 5 Cir. 3/25/98), 708 So.2d 1272.

*Id*. at 58.

*State v. Baker*, 06-1218, pp. 7-8 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, 89, *writs denied*, 07-320 (La.11/9/07), 967 So.2d 496 and 07-1116 (La.12/7/07), 969 So.2d 626.

The penalty range for second degree robbery is not less than three nor more than forty years at hard labor. La.R.S. 14:64.4.

We first note that at sentencing, the victim was not available, but the judge stated he had read the statement prepared by the victim explaining the grief Defendant caused him. The State explained to the court that the victim was a jockey at Delta Downs who made a significant amount of money before this incident. He thought he was Defendant's friend and did everything he could to help him. Nevertheless, Defendant robbed him, took his vehicle to Texas, and used his credit cards having no remorse for Torres who sustained serious injuries to his brain as a result of his offense. According to the prosecutor, the victim was sent to the hospital in Orange, Texas and was then transferred to Beaumont. Due to his injuries, at the time of sentencing, he was no longer gainfully employed in the capacity that he was before the offense.

15

Defense counsel noted for the court that Defendant pled to second degree robbery and that "sometimes, there are reasons where the district attorney's office may not push an attempted second-degree murder, because sometimes it's not such." Defense counsel requested a sentence of three years.

The prosecutor objected, noting that Defendant's lack of remorse spoke volumes about his character. He further pointed out to the court, "He [the victim] also has - - I think - - I don't want to misstate it, but he does have a severe mental defect as a result of that bullet in his head. . . ." The following colloquy then took place between the court and Defendant: (emphasis added)

THE COURT:

> Looks like he wasn't particularly cooperative or truthful, I should say, initially. Obviously, there were problems with proof on the other charges. And I do note that Mr. Stephan has a very impressive history of criminal behavior consistent through his life. **He's a seventh felony offender.**

THE DEFENDANT:

May I say something , Your Honor?

. . . .

THE DEFENDANT:

> Them felonies, four of them was [sic] committed at one time, and three was [sic] committed at another [sic] on the same day.

THE COURT:

> Okay. Given the extreme circumstances of the event and the - - and the record of the defendant, and the effect on the victim, I'm going to sentence Mr. Stephan to 30 years DOC, credit for time served.

In *State v. Guillory*, 10-1175 (La.App. 3 Cir. 4/6/11), 61 So.3d 801, the defendant contended on appeal that his fifty-year sentence for attempted second

degree murder and his forty-year sentence for second degree robbery were excessive. This court, finding no merit to the defendant's claim, stated:

> The trial court's reasons for the sentences, although quite brief, fully support them. After punching her several times, Defendant choked the supine victim. To save herself, she simulated death. As the trial judge's brief remarks at sentencing indicated, it is likely that the victim preserved her own life by pretending to die. The act of choking another person has been repeatedly recognized as indicative of a specific intent to kill. *See, e.g., State v. Young*, 00-1437 (La.11/28/01), 800 So.2d 847; *State v. Ware*, 07-968 (La.App. 3 Cir. 3/5/08), 980 So.2d 730, *writ denied*, 08-847 (La.10/31/08), 994 So.2d 534; *State v. Durand*, 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, *writ denied*, 07-1545 (La.1/25/08), 973 So.2d 753; *State v. Bernard*, 39,579 (La.App. 2 Cir. 4/6/05), 899 So.2d 818.

> Thus, in the course of the second degree robbery, Defendant inflicted a brutal beating on the victim. Her left eye swelled shut, and she suffered a broken ankle bone. Defendant ended the incident by trying to kill the victim. The victim's quick thinking prevented the incident from becoming a completed murder. For these reasons, we find that the sentences are not excessive.

*Id.* at 809.

Additionally, in *State v. Allen*, 05-1622 (La.App. 1 Cir. 3/29/06), 934 So.2d 146, the first circuit concluded that a twenty-five year sentence for second degree robbery was not unconstitutionally excessive:

> At sentencing, the court noted the defendant's criminal history indicated he had three prior felony convictions, specifically, convictions for simple burglary, and two convictions for possession of cocaine. As a result of those convictions, the defendant had been incarcerated on two occasions and his parole had been revoked on one occasion.

> In regard to the evidence introduced at trial, the court found the evidence proved beyond a reasonable doubt that the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim. The court also noted the instant offense was a crime of violence, and the defendant had committed the crime to obtain a controlled dangerous substance. The court rejected the alleged mitigating circumstance that the defendant was "only considered a principal" to the offense, noting that being a principal to an offense was not a mitigating circumstance, especially when the defendant had physically held the victim while the defendant's accomplices kicked the victim. The court also rejected the alleged

17

mitigating circumstance that Curole had received "only" an eight-year sentence, noting Curole had availed himself of a plea agreement and it had not been necessary for a trial to be undertaken to prove his guilt.

The court also rejected the alleged mitigating circumstances that the defendant was mentally challenged, a high-school drop out, addicted to cocaine, and homeless. The court noted it did not consider any of the aforesaid conditions to be mitigating factors, and moreover, no evidence had been presented that the defendant suffered from mental illness or had an IQ of 70 or less. The court stated it had considered the defendant's age of twenty-eight years in determining an appropriate sentence. The court also stated it had considered the fact that the defendant had no other convictions for crimes of violence.

The court conceded the defendant's prior criminal history included many misdemeanors, but noted it also included three felony convictions, two terms of incarceration, and a revocation of parole. The court rejected the defendant's claim that he had shown remorse for the victim, noting the only time the defendant showed remorse was after he was being investigated as one of the parties who committed the robbery.

The court did not dispute that the victim did not lose any bodily organs or limbs as a result of the offense, but noted the evidence proved beyond a reasonable doubt that he suffered a fracture of the orbit of his eye during the offense and had to take narcotic pain medication over ten hours after being attacked. The court noted it had taken into consideration the fact that there was no proof of permanent impairment of the victim's eye.

Additionally, the court determined there was an undue risk that during the period of a suspended sentence, the defendant would commit another crime; that the defendant was in need of correctional treatment; and that a lesser sentence would minimize the seriousness of the defendant's offense.

*Id.* at 156-57.

The nature of the offense in this case is serious and the victim is suffering long-term effects from the injury inflicted upon him by the Defendant, a gunshot wound to the head with a bullet still lodged in the victim's brain. As the trial court noted information contained in the Presentence Investigation Report (PSI) revealed Defendant is a seventh felony offender. Although the trial court stated there may have been proof problems with the companion charge of attempted second degree

18

murder, these problems are not stated in the record. We note that dismissal of the two felonies of attempted second degree murder and theft in conjunction with the Defendant's guilty plea benefitted him significantly. Viewing Defendant's thirty-year sentence in light of *Barling*, *Baker*, and *Lisotta*, we find it is not unconstitutionally excessive.

### ASSIGNMENT OF ERROR NO. 3:

In this assignment of error, Defendant contends he sufficiently objected to his sentence to allow this court to conduct an excessive sentence review. Alternatively, if the objection is found to be inadequate to preserve an excessive sentence claim, Defendant argues counsel was ineffective in failing to file a motion to reconsider sentence or object to the sentence. In *State v. Doucet*, 09-1065, pp. 7-9 (La.App. 3 Cir. 5/5/10), 36 So.3d 1105, 1110-12, *writ denied*, 10-1195 (La. 12/17/10), 51 So.3d 19, we reviewed the law on this subject and stated: (emphasis added)

> When the defense counsel fails to file a motion to reconsider sentence, Defendant may have a claim of ineffective assistance of counsel when Defendant "*can show a reasonable probability, but for defense counsel's error, his sentence would have been different.*" *Prudhomme*, 829 So.2d at 1177 (citing *State v. Texada*, 98-1647 (La.App. 3 Cir. 5/5/99), 734 So.2d 854). Moreover,

> > [a] claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James*, 95-962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461.

> > To prove an allegation of ineffectiveness, Defendant must specifically show prejudice. *Blake*, 872 So.2d 602 (citing *State v. Reed*, 00-1537 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, *writ denied*, 02-1313 (La.4/25/03), 842 So.2d 391). "Whether or not a defendant received ineffective assistance of counsel is a two-part inquiry. First,

19

we must determine whether the trial court would have reduced the Defendant's sentences upon the filing of a 'Motion to Reconsider Sentence.' Second, we must determine whether the sentences were excessive." *Id.* at 609.

### (1) Would the Trial Court Have Reduced the Defendant's Sentence

Doucet did not file a motion to reconsider sentence and did not object to the sentence at the time it was imposed. In brief to this court, Doucet asserts the trial court did not inquire into his family or work history. He maintains the record does not indicate a lengthy criminal record and none of his prior offenses are in the same "crime family" as vehicular homicide. He further asserts that he had no prior convictions for driving while intoxicated.

Doucet contends he assisted police in locating the vehicle after the accident and accepted responsibility for his actions by pleading guilty. He avers the trial court failed to give consideration to these mitigating factors. Further, the trial court failed to consider his need for substance abuse rehabilitation.

Doucet also argues that the victim's death and his use of drugs are elements of the offense and should not be considered as aggravating factors. Further, the record does not support the trial court's conclusion that the events were likely to re-occur. Doucet asserts that considering the factors listed by the trial court at sentencing, it failed to give sufficient weight to La.Code Crim.P. art. 894.1 in arriving at the sentence. Doucet then contends his sentence is excessive.

At sentencing, the trial court noted Doucet's extensive criminal record, which began at a very early age. The trial court commented that it reviewed the PSI and that it has carefully considered the provisions of La.Code Crim.P. art. 894. The trial court distinguished factual circumstances of this case from the one where two people have been drinking together and then decided to get into a car together and one of the persons gets killed in an accident. The trial court reasoned that unlike Doucet's victim, the victim who gets into the car and gets killed assumed a certain amount of risk. Thus, the trial court concluded that a lesser sentence than what it was going to impose would deprecate the seriousness of Doucet's offence, especially in light of Doucet's criminal record that pointed to probable recidivism.

We find that the trial court considered the circumstances of this case and Doucet's circumstances before imposing the sentence. Thus, we conclude that the trial court was unlikely to have reduced Doucet's sentence had a motion to reconsider sentence been filed.

The *Doucet* court went on to determine that the defendant's sentence was not excessive. It concluded that even if defense counsel had filed a motion to reconsider sentence, the sentence would have been deemed appropriate. Accordingly, prejudice was not shown.

In the present case, the sentencing judge reviewed the victim's statement and the PSI. He noted Defendant's extensive criminal history and felt that the extreme circumstances of the incident, Defendant's record, and the effect on the victim warranted a thirty-year sentence. Under these circumstances, we find it is unlikely the trial court would have reduced Defendant's sentence had defense counsel filed a motion to reconsider sentence. Additionally, as discussed above, Defendant's sentence is not excessive. Accordingly, Defendant has not established a claim of ineffective assistance of counsel.

For the reasons as stated, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**